## UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| SARVENAZ SAFAI, individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| ALN MEDICAL MANAGEMENT, LLC, | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff Sarvenaz Safai ("Plaintiff"), individually and on behalf of all similarly situated persons, alleges the following against ALN Medical Management, LLC ("Defendant") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation by her counsel and review of public documents as to all other matters:

## **INTRODUCTION**

1.    Plaintiff brings this class action against Defendant challenging its failure to properly secure and safeguard Plaintiff's and other similarly situated individuals' (collectively defined herein as the "Class" or "Class Members") personally identifiable information ("PII"), and protected health information ("PHI") including names, dates of birth, Health Insurance Information, Medical information, Social Security numbers, and Demographic Information (collectively, the "Private Information") from cybercriminals.

2.    In March 2024, ALN identified suspicious activity on certain third-party hosted systems, indicating a data breach. Based on a subsequent forensic investigation, ALN determined that cybercriminals infiltrated the inadequately secured computer environment and accessed data files between March 18, 2024 and March 24, 2024 (the "Data Breach"). The investigation further

1

determined that, through this infiltration, cybercriminals accessed and stole files containing the sensitive personal information of hundreds of thousands of individuals.

3. According to Defendant's reporting to the Texas Attorney General's Office, the Data Breach 127,113 individuals in Texas alone.[1]

4. As a result of the Data Breach, and in light of their Private Information now being in the hands of cybercriminals, Plaintiff and Class Members were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. This substantial and imminent risk will remain for their respective lifetimes.

5. Armed with the Private Information accessed in the Data Breach, the cybercriminals who carried out the Data Breach can and will commit a variety of crimes, including, *e.g.*, obtaining medical services and/or prescriptions in Class Members' names, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

6. There has been no assurance offered by Defendant that all personal data or copies of data have been recovered or destroyed, or that it has adequately enhanced its data security practices sufficiently to avoid a similar breach of its network in the future.

7. Therefore, Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit

---

[1] https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage

of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

8.      Plaintiff brings this class action lawsuit to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained in its systems.

9.      The potential for improper disclosure and theft of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

10.     Upon information and belief, Defendant failed to properly monitor and implement adequate data security practices with regard to its computer network and systems that housed Plaintiff's and Class Members' Private Information. Had Defendant properly monitored its networks and implemented adequate data security practices, it could have prevented the Data Breach or, at the very least, discovered the Data Breach sooner.

11.     Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct, which led to the Private Information that it collected and maintained falling into the hands of data thieves and other unauthorized third parties.

12.     Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed and exfiltrated during the Data Breach.

## PARTIES

13.     Plaintiff is, and at all times mentioned herein was, an individual citizen and resident of the State of California.

14.     Defendant is a limited liability company formed in the State of Delaware with its

3

headquarters and principal place of business at 3401 Village Dr, Ste 200, Lincoln, Nebraska 68516.

Defendant is a healthcare advisory firm that provides administrative services to medical providers.

## JURISDICTION AND VENUE

15.     The Court has subject matter jurisdiction over this action under the Class Action

Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million,

exclusive of interest and costs. Upon information and belief, the number of Class Members is over

100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists

under 28 U.S.C. § 1332(d)(2)(A).

16.     This Court has jurisdiction over Defendant because Defendant operates and does

business within this District.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a

substantial part of the events giving rise to this action occurred within this District and Defendant

has harmed Plaintiff and other Class Members residing in this District.

## FACTUAL ALLEGATIONS

### *Defendant's Business and Collection of Plaintiff's and Class Members' Private Information*

18.     Defendant is a provider of administrative services to medical providers, including

National Spine and Pain, Inpatient Physician Associates, LLC, Hoag Clinic, and Allied Physicians

Group.  Defendant is a contractor or business associate of such medical providers.

19.     As part of their business, and in order to gain profits, Defendant obtained and

maintained the Private Information of Plaintiff and Class Members.

20.     Upon information and belief, Defendant made promises and representations to

individuals, including Plaintiff and Class Members, that the Private Information collected from

them would be kept safe and confidential, and that the privacy of that information would be

maintained. As a condition of receiving goods and/or services from Defendant, customers and employees are required to entrust Defendant with highly sensitive personal information, including their PII and PHI.

21.    Due to the highly sensitive and personal nature of the information Defendant acquires and stores with respect to its customers and employees, Defendant promises to, among other things, keep their Private Information private; comply with industry standards related to data security and the maintenance of their Private Information; inform its customers and employees of its legal duties relating to data security and comply with all federal and state laws protecting their Private Information; only use and release customers' and employees' Private Information for reasons that relate to the services it provides; and provide adequate notice to customers and employees if their Private Information is disclosed without authorization.

22.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties it owed to them and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure and exfiltration.

23.    Defendant breached this duty to Plaintiff and Class Members by failing to properly safeguard and protect their Private Information, thus enabling cybercriminals to access, acquire, appropriate, compromise, disclose, encumber, exfiltrate, release, steal, misuse, and/or view it.

24.    Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this data, which Defendant ultimately failed to do.

25.    As a result of Defendant's negligence and failure to safeguard Plaintiff and Class Members' Private Information, cyber criminals obtained and now possess everything they need to

commit personal identity theft and wreak havoc on the financial and personal lives of thousands of individuals, for decades to come.

### *The Data Breach and Defendant's Inadequate Notice to Plaintiff and Class Members*

26.    In March 2024, Defendant identified suspicious activity on certain third-party hosted systems, indicating a data breach. Based on a subsequent forensic investigation, Defendant determined that cybercriminals infiltrated the inadequately secured computer environment and accessed data files between March 18, 2024 and March 24, 2024. The investigation further determined that, through this infiltration, cybercriminals accessed and stole files containing the sensitive Private Information of hundreds of thousands of individuals.

27.    According to Defendant, the Private Information accessed by cybercriminals involved a wide variety of PII and PHI, including names, dates of birth, Health Insurance Information, Medical information, Social Security numbers, and Demographic Information.

28.    Despite the breadth and sensitivity of the Private Information that was compromised in the Data Breach, and the associated consequences to Plaintiff and the Class Members, Defendant failed to disclose the Data Breach for a full year after the the Data Breach. This inexplicable delay only further exacerbated the harms to Plaintiff and Class Members.

29.    Upon information and belief, the unauthorized third-party cybercriminal gained access to the Private Information and has engaged in (and will continue to engage in) misuse of the Private Information, including marketing and selling Plaintiff's and Class Members' Private Information on the dark web.

30.    The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, requires HIPAA covered entities to provide notification following a breach of unsecured protected health information. Following a breach of unsecured protected health information, covered entities must

provide notification of the breach to affected individuals. Covered entities must *only* provide the required notifications if the breach involved unsecured protected health information. Unsecured protected health information is protected health information that has not been rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the Secretary of the U.S. Dept. of Health and Human Services in guidance. Under approved guidance of the U.S. Dept. of Health and Human Services, protected health information ("PHI") is rendered unusable, unreadable, or indecipherable to unauthorized individuals if (1) electronic PHI has been encrypted as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 CFR 164.304 definition of encryption) and (2) such confidential process or key that might enable decryption has not been breached. By reporting this incident to the U.S. Dept. of Health and Human Services, by sending its "Notice of Data Breach" letter, and by issuing its press release, DPM has determined and is affirming that Plaintiff' and the Class Members' electronic PII/PHI was either not encrypted at all, or if it was encrypted, the encryption has been breached by the unauthorized third party. As a result, Defendant was negligent for failing to encrypt or adequately encrypt Plaintiff' and the Class Members' electronic medical information contained in the email accounts of its employees. Further, because Plaintiff' and the Class Members' identifiable medical information contained in or made accessible on Defendant's computer systems was not rendered unusable, unreadable, or indecipherable, the unauthorized third party or parties who accessed Plaintiff' and the Class's identifiable medical information was able to and did view and did acquire Plaintiff' and the Class's electronic medical information contained in or made accessible via Defendant's computer systems.

31.    On or around March 21, 2025, approximately *a year after* the Data Breach, Defendant sent Plaintiff and Class Members a data breach notice letter and submitted sampled notices with its reporting of the Data Breach to various states' Attorney General's offices.

32.    Defendant's data beach notice letter stated Defendant's investigation determined that certain files and folders within our third-party hosted environment were accessed or taken by an unauthorized actor between March 18, 2024 and March 24, 2024. Defendant's investigation also determined that information related to certain individuals was present in the involved files and folder, and provided notice of the Data Breach to such individuals stating that the security of their Private Information was impacted by the Data Breach.

33.    Defendant's data breach notice letter listed time-consuming, generic steps that victims of data security incidents can take, and encouraged Plaintiff and the Class Members to remain vigilant by reviewing [their] account statements, explanation of benefits, and credit reports for suspicious activity and errors. Other than providing only a one-year membership of credit monitoring and identity theft protection through IDX, Defendant offered no other substantive steps to help victims like Plaintiff and Class Members to protect themselves from the aftermath of the Data Breach. On information and belief, Defendant sent a similar generic letter to all other individuals affected by the Data Breach.[2]

34.    Defendant had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members to keep Plaintiff's and Class Members' Private Information confidential and to protect it from access, disclosure, and exfiltration by unauthorized parties.

---

[2] *See, e.g.*, https://oag.ca.gov/system/files/Notice%20of%20Data%20Event%20-%20ALN%20Medical%20Management%20%20-%20CA_0.pdf

35.     Nevertheless, Defendant failed to spend sufficient resources on preventing external access, detecting outside infiltration, and training its employees to identify email-borne threats and defend against them.

36.     The Private Information at issue has great value to the hackers, due to the large number of individuals affected and the fact the sensitive information that was part of the data that was compromised.

37.     Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such Information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

38.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.  Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

### Defendant Failed to Comply with FTC Guidelines

39.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

40.     In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The

guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

41.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

42.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

43.     As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

44.     Defendant was at all times fully aware of its obligation to protect the Private Information of its customers and employees yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

*Defendant Failed to Comply with Industry Standards and Best Practices*

45.     As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

46.     Some industry best practices that should be implemented by businesses dealing with sensitive PII/PHI like Defendant include but are not limited to: education of all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

47.     Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

48.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for

11

Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

49.     These frameworks are applicable and accepted to industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach, resulting in harm to Plaintiff and the Class Members.

### *Defendant Violated HIPAA*

50.     HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[3]

51.     HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[4]

52.     The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

   a.   failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

   b.   failing to protect against any reasonably-anticipated threats or hazards to the

---

[3] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[4] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c.  failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.  failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.  failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.  failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.  failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.  failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.  failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

13

53.     Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

***Defendant Breached its Duty to Safeguard Plaintiff's and Class Members' Data***

54.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class Members

55.     Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a.    Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

    b.    Failing to adequately protect customer and employee Private Information;

    c.    Failing to properly monitor its own data security systems for existing intrusions;

    d.    Failing to sufficiently train its employees regarding the proper handling of customer and employee Private Information;

    e.    Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA; and

    f.    Otherwise breaching its duties and obligations to protect Plaintiff's and Class

Members' Private Information.

56.     Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

57.     Had Defendant remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

58.     Accordingly, Plaintiff's and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft. Plaintiff and Class Members also lost the benefit of the bargain they made with Defendant.

### Defendant Should Have Known that Cybercriminals Target PII/PHI

59.     The FTC hosted a workshop to discuss "informational injuries," which are injuries that individuals like Plaintiff and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[5] Exposure of highly sensitive personal information that an individual wishes to keep private may cause harm to that individual, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

---

[5] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf

60.    Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

61.    Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

62.    In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

63.    Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members.

64.     For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[6] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

65.     Identity thieves can also use stolen personal information such as Social Security numbers for a variety of crimes, including medical identity theft, credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information.

66.     In fact, a study by the Identity Theft Resource Center[7] shows the multitude of harms caused by fraudulent use of PII:



---

[6] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps

[7] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (October 23, 2017), *available at* https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/

67.    The ramifications of Defendant's failure to keep its customers' and employees' Private Information secure are long lasting and severe. Once it is stolen, fraudulent use of such and damage to victims may continue for years.

68.    Here, not only were sensitive PHI compromised, but Plaintiff and the Class Members' PII, including Social Security Numbers were compromised too. The value of personal information including PII is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates beyond a doubt that the Private Information compromised here has considerable market value.

69.    Stolen PII/PHI is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII/PHI can be worth up to $1,000.00 depending on the type of information obtained.

70.    The value of Plaintiff' and Class Members' PII/PHI on the black market is considerable. Stolen PII/PHI trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web" —further exposing the information.

71.    It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII/PHI far and wide.

72.    One way that criminals profit from stolen PII/PHI is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data— first the stolen PII/PHI, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

73.     The development of "Fullz" packages means that the PII/PHI exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

74.     In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII/PHI stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class Members' stolen PII/PHI is being misused, and that such misuse is fairly traceable to the Data Breach.

75.     Defendant disclosed the PII/PHI of Plaintiff and Class Members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII/PHI of Plaintiff and Class Members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII/PHI.

76.     Defendant's failure to promptly and properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff' and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII/PHI and take other necessary steps to mitigate the harm caused by the Data Breach.

77.     As a result, Plaintiff and Class Members are at an increased risk of fraud and identity theft, for many years into the future. Thus, Plaintiff and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

*Plaintiff's and Class Members' Damages*

78.     Prior to the Data Breach, Plaintiff was a patient of a medical provider. Plaintiff trusted her Private information to her medical provider, which in turn provided Plaintiff's Private Information, including PII and PHI, to Defendant for administrative purposes.

79.     Defendant was required to safeguard and maintain the confidentiality of the Private Information entrusted to it.

80.     Plaintiff received a Notice of Data Breach letter from Defendant alerting her that her Private Information had been exposed to and taken by unauthorized third parties in the Data Breach.

81.     Defendant's data breach notice letter offered Plaintiff only one (1) year of credit monitoring services – an insufficient remedy considering Plaintiff has and will now continue to experience a lifetime of increased risk of identity theft.

82.     Plaintiff and Class Members' Private Information was entrusted to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

83.     Because of the Data Breach, Plaintiff's Private Information is now in the hands of cyber criminals. Plaintiff and all Class Members are now imminently at risk of crippling future identity theft and fraud and will continue to be at risk for the foreseeable future.

84.     Plaintiff suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring her accounts for fraud.  Furthermore, Plaintiff suffered actual injury in the form of having her Private Information compromised and/or stolen as a result of the Data Breach.  Specifically, Plaintiff has suffered invasion of privacy, identity theft, fraudulent accounts opened using her Private

Information and PII, multiple unauthorized credit inquiries, damage to her credit, and denial of credit applications, which she attributes to the Data Breach.

85.     Plaintiff would not have provided her Private Information to Defendant had Defendant timely disclosed that its systems lacked adequate computer and data security practices to safeguard its her Private Information from unauthorized access and exfiltration, and that those systems were subject to a data breach.

86.     Plaintiff has also suffered actual injury in the form of damages to and diminution in the value of her personal and financial information – a form of intangible property that Plaintiff entrusted to Defendant for the purpose of being an employee for Defendant and which was compromised in, and as a result of, the Data Breach.

87.     Plaintiff suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by her Private Information being placed in the hands of criminals.

88.     Plaintiff has a continuing interest in ensuring that her Private Information, which remains in the possession of Defendant, is protected and safeguarded from future breaches.

89.     As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to reviewing accounts for any indications of actual or attempted identity theft or fraud, and monitoring her credit reports. Plaintiff has already spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities.

90.     As a result of the Data Breach, Plaintiff has suffered stress and anxiousness as a result of the invasion of her privacy and unauthorized release of her Private Information, which she believed would be protected from unauthorized access and exfiltration. These feelings include

distress about unauthorized parties having, viewing, selling, and/or using her Private Information, including PII and PHI, for purposes of committing cyber crimes and other crimes against her or others, including, but not limited to, fraud and identity theft. Plaintiff is very concerned about this increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach will continue to have on her life.

91.     Plaintiff also suffered actual injury from having her Private Information compromised as a result of the Data Breach in the form of (a) damage to and diminution in the value of her PII, a form of property that Defendant obtained from Plaintiff; (b) violation of her privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud she now faces.

92.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to remain vigilant to mitigate and address the many harms caused by the Data Breach.

93.     In sum, Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

94.     Plaintiff and Class Members entrusted their Private Information to Defendant in order to receive Defendant's goods and/or services. Their Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendant's inadequate data security practices.

95.     As a direct and proximate result of Defendant's actions and omissions, Plaintiff and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other

forms of identity theft.

96.     Further, and as set forth above, as a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have also been forced to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring accounts and credit reports for unauthorized activity for years to come.

97.     Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

98.     Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiff and Class Members.

99.     The Private Information maintained by and stolen from Defendant's systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiff and Class Members, which can also be used to carry out targeted fraudulent activities against Plaintiff and Class Members.

100.     Plaintiff and Class Members also lost the benefit of the bargain they made with Defendant. Plaintiff and Class Members overpaid for services that were intended to be accompanied by adequate data security but were not. Indeed, part of the price paid by Plaintiff and Class Members (or, in some cases, on their behalf) to Defendant for its goods and/or services was intended to be used by Defendant to fund adequate security of Defendant's system and protect

Plaintiff's and Class Members' Private Information. Thus, Plaintiff and the Class did not receive the benefit of the bargain.

101.    Additionally, Plaintiff and Class Members also suffered a loss of value of their Private Information and PII when it was accessed and/or acquired by cyber criminals as a result of the Data Breach.

102.    Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[8] In fact, consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $50 a year.[9]

103.    As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiff and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiff and the Class Members, thereby causing additional loss of value.

104.    Finally, Plaintiff and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. These losses

---

[8] *See* https://thequantumrecord.com/blog/data-brokers-profit-from-our-data/#:~:text=The%20business%20of%20data%20brokering,annual%20revenue%20of%20%24200%20billion.

[9] *Frequently Asked Questions,* Nielsen Computer & Mobile Panel, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html

include, but are not limited to, the following:

    a.  Monitoring for and discovering fraudulent charges;

    b.  Canceling and reissuing credit and debit cards;

    c.  Addressing their inability to withdraw funds linked to compromised accounts;

    d.  Taking trips to banks and waiting in line to obtain funds held in limited accounts;

    e.  Spending time on the phone with or at a financial institution to dispute fraudulent charges;

    f.  Contacting financial institutions and closing or modifying financial accounts;

    g.  Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

    h.  Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

    i.  Closely reviewing and monitoring bank accounts and credit reports for additional unauthorized activity for years to come.

105. Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Defendant, is protected from future breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing highly sensitive personal information of its customers and employees is not accessible online, that access

25

to such data is password-protected, and that such data is properly encrypted.

106.    As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## CLASS ACTION ALLEGATIONS

107.    Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

108.    Specifically, Plaintiff proposes the following Nationwide Class, subject to amendment as appropriate:

> **All individuals whose Private Information was compromised in the Data Breach, including all individuals to whom Defendant sent a Notice of Data Breach letter to in March 2025 (the "Nationwide Class").**

109.    In addition, Plaintiff proposes the following subclass:

> **All individuals residing in California whose Private Information was compromised in the Data Breach, including all individuals to whom Defendant sent a Notice of Data Breach letter to in March 2025 (the "California SubClass").**

110.    The Nationwide Class and the California SubClass shall be referred to collectively herein as "the Class."

111.    Excluded from the Class are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

112.    Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

113.    The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

114.    <u>Numerosity</u> – The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of hundreds of thousands of individuals whose Private Information was compromised in the Data Breach. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

115.    <u>Commonality</u> – There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.   Whether Defendant engaged in the conduct alleged herein;

    b.   Whether Defendant's conduct violated the FTCA;

    c.   Whether Defendant's conduct violated the HIPAA;

    d.   When Defendant learned of the Data Breach;

    e.   Whether Defendant's response to the Data Breach was adequate;

    f.   Whether Defendant unlawfully lost or disclosed Plaintiff's and Class Members' Private Information;

    g.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

    h.   Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    i.   Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

j.  Whether Defendant owed a duty to Class Members to safeguard their Private Information;

k.  Whether Defendant breached its duty to Class Members to safeguard their Private Information;

l.  Whether hackers obtained Class Members' Private Information via the Data Breach;

m.  Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

n.  Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

o.  Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

p.  What damages Plaintiff and Class Members suffered as a result of Defendant's misconduct;

q.  Whether Defendant's conduct was negligent;

r.  Whether Defendant was unjustly enriched;

s.  Whether Plaintiff and Class Members are entitled to actual and/or statutory damages;

t.  Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

u.  Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

116.    <u>Typicality</u> – Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and there are no defenses that are unique to Plaintiff individually. The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

117.    <u>Adequacy of Representation</u> – Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

118.    <u>Superiority</u> – A Class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

119.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses and/or email addresses of Class Members affected by the Data

Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION
### Negligence

120.    Plaintiff restates and realleges all of the allegations in every preceding paragraph as if fully set forth herein.

121.    Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

122.    Defendant knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. Defendant was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

123.    Defendant owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to it. Defendant's duties included, but were not limited to, the following:

      a.  To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

      b.  To protect customers' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

      c.  To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

    d.   To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

    e.   To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

124.    Defendant's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

125.    Defendant's duty also arose because Defendant was bound by industry standards to protect Plaintiff and the Class Members' Private Information.

126.    Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Defendant owed them a duty of care to not subject them to an unreasonable risk of harm.

127.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Defendant's possession.

128.    Defendant, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

129.    Defendant, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

130.    Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

    b.    Failing to adequately monitor the security of its networks and systems;

    c.    Failing to periodically ensure that its email system maintained reasonable data security safeguards;

    d.    Allowing unauthorized access to Class Members' Private Information;

    e.    Failing to comply with the FTCA; and

    f.    Failing to detect in a timely manner that Class Members' Private Information had been compromised.

131.    Defendant had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust Defendant with their Private Information was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems (and the Private Information that it stored on them) from attack.

132.    Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised, accessed, exfiltrated, and/or misused, as alleged herein.

133.    As a result of Defendant's ongoing failure to notify Plaintiff and Class Members regarding exactly what Private Information has been compromised, Plaintiff and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

134.    Defendant's breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

135.    As a result of Defendant's negligence in breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

136.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

137.    The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

138.    Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

139.    In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

## SECOND CAUSE OF ACTION
### Breach of Implied Contract

140.    Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

141.    Defendant is a furnishings retailer that provided goods and/or services and/or employment to Plaintiff and Class Members. Plaintiff and Class Members formed an implied contract with Defendant regarding the provision of those goods and/or services through their collective conduct, including by Plaintiff and Class Members turning over their valuable Private

Information to Defendant.

142.    Through Defendant's offering of these goods and/or services and/or employment, it knew or should have known that it must protect Plaintiff's and Class Members' confidential Private Information in accordance with Defendant's policies, practices, and applicable law.

143.    As consideration, Plaintiff and Class Members turned over valuable Private Information to Defendant. Accordingly, Plaintiff and Class Members bargained with Defendant to securely maintain and store their Private Information.

144.    Defendant accepted possession of Plaintiff's and Class Members' Private Information for the purpose of receiving goods and/or services and/or employment to Plaintiff and Class Members.

145.    In delivering their Private Information to Defendant, Plaintiff and Class Members intended and understood that Defendant would adequately safeguard the Private Information as part of that service.

146.    Defendant's implied promises to Plaintiff and Class Members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; and (8) taking other steps to protect against foreseeable data breaches.

147.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of such an implied contract.

34

148.    Had Defendant disclosed to Plaintiff and the Class that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and Class Members would not have provided their Private Information to Defendant and would have sought home furnishing goods and/or services and/or employment elsewhere.

149.    Defendant knew or should have known that Plaintiff's and Class Member's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiff and the other Class Members.

150.    A meeting of the minds occurred, as Plaintiff and Class Members agreed, *inter alia*, to provide accurate and complete Private Information to Defendant in exchange for Defendant's agreement to, *inter alia*, protect their Private Information.

151.    Plaintiff and Class Members have been damaged by Defendant's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

### THIRD CAUSE OF ACTION
**Unjust Enrichment**

152.    Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

153.    This cause of action is pleaded in the alternative to Plaintiff's second cause of action above.

154.    Plaintiff and Class Members conferred a benefit on Defendant by turning over their valuable Private Information to Defendant with the understanding that the benefits earned from possession and control thereof would be utilized, in part, to provide adequate data security to protect such Private Information. Plaintiff and Class Members did not receive such protection.

155.    Defendant knew that Plaintiff and Class Members conferred a benefit upon it

and has accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendant profited from Plaintiff's retained data and used Plaintiff's and Class Members' Private Information for business purposes.

156.    Defendant failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Private Information provided.

157.    Defendant acquired the Private Information through inequitable record retention as it failed to disclose the inadequate data security practices previously alleged.

158.    If Plaintiff and Class Members had known that Defendant would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their Private Information, they would not have entrusted their Private Information with Defendant or become employees and/or customers of Defendant.

159.    Plaintiff and Class Members have no adequate remedy at law.

160.    Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

161.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to:  (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) dissemination of their Private Information on the dark web; (ix) statutory damages; (x) nominal damages; and (xi)

the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

162.    It would be inequitable for Defendant to retain the benefit of controlling and maintaining Plaintiff's and Class Members' Private Information at the expense of Plaintiff and Class Members.

163.    Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

164.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

### FOURTH CAUSE OF ACTION
**Declaratory Judgment and Injunctive Relief**

165.    Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

166.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as those alleged herein, which are tortious, and which violate the terms of the federal and state

statutes described above.

167.    An actual controversy has arisen in the wake of the Data Breach at issue regarding Defendant's common law and other duties to act reasonably with respect to safeguarding the data of Plaintiff and the Class.  Plaintiff alleges Defendant's actions in this respect were inadequate and unreasonable and, upon information and belief, remain inadequate and unreasonable.  Additionally, Plaintiff and the Class continue to suffer injury due to the continued and ongoing threat of additional fraud against them or on their accounts.

168.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.    Defendant owed, and continue to owe a legal duty to secure the sensitive personal information with which they are entrusted, specifically including information obtained from its customers, and to notify impacted individuals of the Data Breach under the common law, Section 5 of the FTC Act;

    b.    Defendant breached, and continue to breach, their legal duty by failing to employ reasonable measures to secure their customers' personal information; and,

    c.    Defendant's breach of their legal duty continues to cause harm to Plaintiff and the Class.

169.    The Court should also issue corresponding injunctive relief requiring Defendant to employ adequate security protocols consistent with industry standards to protect its users' data.

170.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another breach of Defendant's data systems. If another breach of Defendant's data systems occurs, Plaintiff and the Class will not have an

adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages, while warranted to compensate Plaintiff and the Class for their out-of-pocket and other damages that are legally quantifiable and provable, do not cover the full extent of injuries suffered by Plaintiff and the Class, which include monetary damages that are not legally quantifiable or provable.

171.    The hardship to Plaintiff and the Class if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued.

172.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the injuries that would result to Plaintiff, the Class, and the public at large.

**FIFTH CAUSE OF ACTION**
**Violation of the California Confidentiality of Medical Information Act (CMIA)**
**Cal. Civ. Code. §§ 56, *et seq*.**
**(On Behalf of Plaintiff and the California SubClass)**

173.    Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

174.    Under the California Confidentiality of Medical Information Act, Civil Code §§ 56, et seq. (hereinafter referred to as the "CMIA"), "medical information" means "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment." Cal. Civ. Code § 56.05.

175.    Additionally, Cal. Civ. Code § 56.05 defines "individually identifiable" as meaning that "the medical information includes or contains any element of personal identifying

information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual." Cal. Civ. Code § 56.05.

176.    Under Cal. Civ. Code § 56.101(a) of the CMIA:

> (a) Every provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36.

Cal. Civ. Code § 56.101.

177.    At all relevant times, Defendant was a health care contractor within the meaning of Civil Code § 56.05(d) because it is a "medical group, independent practice association, pharmaceutical benefits manager, or medical service organization and is not a health care service plan or provider of health care." In the alternative, Defendant is a health care provider within the meaning of Civil Code § 56.05(m), because it is a "clinic, health dispensary, or health facility licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code.".

178.    At all relevant times Defendant was a provider of health care within the meaning of Civil Code § 56.06(a) because it was "organized for the purpose of maintaining medical information in order to make the information available to an individual or to a  provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage their information, or for the diagnosis and treatment of the individual. . . .".

179.    Plaintiff and California SubClass Members are Defendant's "patients," as defined in Civil Code § 56.05(k).

180.    The Plaintiff and the California SubClass Members provided their personal medical information to Defendant.

181.    At all relevant times, Defendant created, maintained, preserved, stored, abandoned, destroyed, or disposed of medical information in the ordinary course business.

182.    As a result of the Data Breach, Defendant has misused, disclosed, and/or allowed third parties to access and view Plaintiff and the California SubClass Members' personal medical information without their written authorization compliant with the provisions of Civil Code §§ 56, et seq. As a further result of the Data Breach, the confidential nature of the medical information was breached as a result of Defendant's negligence.

183.    As a direct and proximate result of Defendant's wrongful actions, inaction, omissions, and failure to exercise ordinary care, Plaintiff' and the California SubClass Members' PHI/PII was accessed and viewed to unauthorized parties without written authorization.

184.    By allowing unauthorized parties to access and view Plaintiff' and the California SubClass Members' PHI/PII Defendant violated Sections 56.06 and 56.101 of the California CMIA, which prohibit the negligent creation, maintenance, preservation, storage, abandonment, destruction or disposal of confidential personal medical information.

185.    As a direct and proximate result of Defendant's wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff' and the California SubClass Members' personal medical information was viewed by, released to, and disclosed to third parties without Plaintiff' or the California SubClass

41

Members' written authorization.

186.    As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violation of the CMIA, Plaintiff and the California SubClass Members are entitled to (i) actual damages, (ii) nominal damages of $1,000 per Plaintiff and Class Member, (iii) punitive damages of up to $3,000 per Plaintiff and Class Member, and (iv) attorneys' fees, litigation expenses and court costs under California Civil Code § 56.35.

**SIXTH CAUSE OF ACTION**
**Violation Of The California Customer Records Act**
**Cal. Civ. Code §§ 1798, *et seq.***
**(On behalf of Plaintiff and the California SubClass)**

187.    Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

188.    Plaintiff brings this Cause of Action in the alternative in the event Defendant is not deemed to be a provider of health care, or a contractor, under the terms of CMIA.

189.    Section 1798.2 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonable delay . . . ."

190.    The CCRA further provides: "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data

42

immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." (Cal. Civ. Code, § 1798.82(b).)

191.    Any person or business that is required to issue a security breach notification under the CCRA shall meet all of the following requirements:

a.   The security breach notification shall be written in plain language;

b.   The security breach notification shall include, at a minimum, the following information:

    i.   The name and contact information of the reporting person or business subject to this section;

    ii.   A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

    iii.   If the information is possible to determine at the time the notice is provided, then any of the following:

       1.   The date of the breach;

       2.   The estimated date of the breach; or

       3.   The date range within which the breach occurred. The notification shall also include the date of the notice.

c.   Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided;

d.   A general description of the breach incident, if that information is possible to determine at the time the notice is provided; and

e.    The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a Social Security number or a driver's license or California identification card number.

192.    The Data Breach described herein constituted a ''breach of the security system'' of Defendant.

193.    As alleged above, Defendant unreasonably delayed informing Plaintiff and the California SubClass about the Data Breach, affecting their PII/PHI, after Defendant knew the Data Breach had occurred.

194.    Defendant failed to disclose to Plaintiff and the California SubClass, without unreasonable delay and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, PII/PHI when Defendant knew or reasonably believed such information had been compromised.

195.    Defendant's ongoing business interests gave Defendant incentive to conceal the Data Breach from the public to ensure continued revenue.

196.    Upon information and belief, no 1aw enforcement agency instructed Defendant that timely notification to Plaintiff and the California SubClass would impede its investigation.

197.    As a result of Defendant's violation of California Civil Code section 1798.82, Plaintiff and the California SubClass were deprived of prompt notice of the Data Breach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection or requesting a credit freeze. These measures could have prevented some of the damages suffered by Plaintiff and the California SubClass because their stolen information would have had less value to identity thieves.

198.    As a result of Defendant's violation of California Civil Code section 1798.82, Plaintiff and the California SubClass suffered incrementally increased damages separate and distinct from those simply caused by the Data Breach itself.

199.    Plaintiff and the California SubClass seek all remedies available under California Civil Code section 1798.84, including, but not limited to the damages suffered by Plaintiff and the California SubClass as alleged above and equitable relief.

200.    Defendant's misconduct as alleged herein is fraud under California Civil Code section 3294(c)(3) in that it was deceit or concealment of a material fact known to the Defendant conducted with the intent on the part of Defendant of depriving Plaintiff and the California SubClass of "legal rights or otherwise causing injury." In addition, Defendant's misconduct as alleged herein is malice or oppression under California Civil Code section 3294(c)(1) and (c) in that it was despicable conduct carried on by Defendant with a willful and conscious disregard of the rights or safety of Plaintiff and the California SubClass and despicable conduct that has subjected Plaintiff and the California SubClass to cruel and unjust hardship in conscious disregard of their rights. As a result, Plaintiff and the California SubClass are entitled to punitive damages against Defendant under California Civil Code section 3294(a).

## SEVENTH CAUSE OF ACTION
### Violations of the California Consumer Privacy Act (CCPA)
### Cal. Civ. Code § 1798.150
### (On Behalf of Plaintiff and the California SubClass)

201.    Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

202.    Plaintiff brings this Cause of Action in the alternative in the event Defendant is not deemed to be a provider of health care, or a contractor, under the terms of CMIA, and/or a HIPAA covered entity.

203.    As more personal information about consumers is collected by businesses, consumers' ability to properly protect and safeguard their privacy has decreased. Consumers entrust businesses with their personal information on the understanding that businesses will adequately protect it from unauthorized access. The California Legislature explained: "The unauthorized disclosure of personal information and the loss of privacy can have devasting effects for individuals, ranging from financial fraud, identity theft, and unnecessary costs to personal time and finances, to destruction of property, harassment, reputational damage, emotional stress, and even potential physical harm."[10]

204.    As a result, in 2018, the California Legislature passed the CCPA, giving consumers broad protections and rights intended to safeguard their personal information. Among other things, the CCPA imposes an affirmative duty on businesses that maintain personal information about California residents to implement and maintain reasonable security procedures and practices that are appropriate to the nature of the information collected. Defendant failed to implement such procedures which resulted in the Data Breach.

205.    It also requires "[a] business that discloses personal information about a California resident pursuant to a contract with a nonaffiliated third party . . . [to] require by contract that the third party implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." 1798.81.5(c).

206.    Section 1798.150(a)(1) of the CCPA provides: "Any consumer whose nonencrypted or nonredacted personal information, as defined [by the CCPA] is subject to an

---

[10]    California Consumer Privacy Act (CCPA) Compliance, https://buyergenomics.com/ccpa-complience/.

unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

207.   Plaintiff and Class members are "consumer[s]" as defined by Civ. Code § 1798.140(g) because they are "natural person[s] who [are] California resident[s], as defined in Section 17014 of Title 18 of the California Code of Regulations, as that section read on September 1, 2017."

208.   Defendant is a "business" as defined by Civ. Code § 1798.140(c) because Defendant:

a.     is a "sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners";

b.     "collects consumers' personal information, or on the behalf of which is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information";

c.     does business in California; and

d.     has annual gross revenues in excess of $25 million; annually buys, receives for the business' commercial purposes, sells or shares for commercial purposes, alone or in combination, the personal information of 50,000 or more consumers, households, or devices; or derives 50 percent or more of its annual revenues from selling consumers' personal information.

209.    The PII taken in the Data Breach is "personal information" as defined by Civil Code § 1798.81.5(d)(1)(A) because it contains Plaintiff's and Class members' unencrypted names and Social Security numbers among other Private Information.

210.    Plaintiff's PII was subject to unauthorized access, exfiltration, or disclosure because their PII, including name and Social Security number, among other Private Information was wrongfully disclosed and accessed by unauthorized third parties.

211.    Defendant violated California Civil Code § 1798.150 by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted PII/PHI of Plaintiff and Class Members. As a direct and proximate result, Plaintiff's and the Class Members' nonencrypted and nonredacted PII/PHI was subject to unauthorized access and exfiltration, theft, or disclosure in the Data Breach.

212.    On or around March 31, 2025, Plaintiff sent Defendant written notice of its violations of the CCPA, pursuant to Civil Code § 1798.150(b). In the event Defendant does not, or is unable to, cure the violation within 30 days, Plaintiff will amend her complaint to pursue statutory damages as permitted by Civil Code § 1798.150(a)(1)(A).

213.    As a result of Defendant's failure to implement and maintain reasonable security procedures and practices that resulted in the Data Breach, Plaintiff seeks actual damages, injunctive relief, including public injunctive relief, and declaratory relief, and any other relief as deemed appropriate by the Court.

214.    Plaintiff and Class members seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards PII/PHI by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continues to hold PII/PHI, including Plaintiff's and Class members' PII/PHI. Plaintiff and Class Members have an

interest in ensuring that their PII/PHI is reasonably protected, and Defendant has demonstrated a pattern of failing to adequately safeguard this information.

215.    As described above, an actual controversy has arisen and now exists as to whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information under the CCPA.

216.    A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendant.

**EIGHTH CAUSE OF ACTION**
**Violation of the California Unfair Competition Law,**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.* **– Unlawful Business Practices**
**(On Behalf of Plaintiff and the California SubClass)**

217.    Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

218.    Defendant has violated Cal. Bus. and Prof. Code § 17200, *et seq.*, by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code § 17200 with respect to the services provided to the California SubClass.

219.    Defendant engaged in unlawful acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting the PII and PHI of Plaintiff and the California SubClass with knowledge that the information would not be adequately protected; and by storing the PII and PHI of Plaintiff and the California SubClass in an unsecure environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Defendant to take reasonable methods of safeguarding the PII and PHI of Plaintiff and the California SubClass.

220.    As a direct and proximate result of Defendant's unlawful practices and acts,

Plaintiff and the California SubClass were injured and lost money or property, including but not limited to the price received by Defendant for the services, the loss of Plaintiff' and the California SubClass's legally protected interest in the confidentiality and privacy of their PII and PHI, nominal damages, and additional losses as described above.

221.    Defendant knew or should have known that Defendant's data security practices were inadequate to safeguard the PII and PHI of Plaintiff and the California SubClass and that the risk of a data breach or theft was highly likely, especially given Defendant's inability to adhere to basic encryption standards and data disposal methodologies. Defendant's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the California SubClass.

222.    Plaintiff and the California SubClass seek relief under Cal. Bus. & Prof. Code § 17200, et seq., including, but not limited to, restitution to Plaintiff and the California SubClass of money or property that Defendant may have acquired by means of Defendant's unlawful, and unfair business practices, restitutionary disgorgement of all profits accruing to Defendant because of Defendant's unlawful and unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class described above, seeks the following relief:

a.    An order certifying this action as a Class action, certifying the Class as requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiff is a proper and adequate Class Representative;

b.  Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, punitive damages, equitable relief, restitution, disgorgement, and statutory costs;

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.  An order requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

e.  An order requiring Defendant to implement enhanced data security practices in order to better protect the Private Information, including PII and PHI, in its possession and control;

f.  A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowed by law; and

g.  An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to, and demands, a trial by jury on all issues so triable.


Dated: March 31, 2025                    Respectfully submitted,

                                  By: */s/ Abbas Kazerounian*
                                       Abbas Kazerounian
                                       Mona Amini
                                       **KAZEROUNI LAW GROUP, APC**
                                       245 Fischer Ave., Unit D1
                                       Costa Mesa, CA 92626
                                       Telephone: (800) 400-6808
                                       Facsimile:  (800) 520-5523

                                       *Attorneys for Plaintiff*